IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

DAVID DEBAUCHE,

                                Plaintiff,                              OPINION & ORDER

   v.

                                                                       13-cv-553-wmc

CORRECTIONAL OFFICER JAMES and
SGT. KINGSLAND,

                                Defendants.
_____

      *Pro se* plaintiff David DeBauche is proceeding in this lawsuit on claims that defendants C.O. James and Sgt. Kingsland retaliated against him for filing a lawsuit, in violation of his First Amendment rights. Currently before the court are six motions filed by DeBauche: (1) to "appoint counsel" (dkt. #35); (2) to amend his complaint (dkt. #36); (3) to compel third-party discovery (dkt. #42); (4) for a finding of contempt (dkt. #44); (5) to compel defendants to produce documents and tangible objects (dkt. #48); and (6) for an extension of the dispositive motions deadline (dkt. #56). Defendants, too, have moved to stay that deadline pending resolution of DeBauche's various motions. (Dkt. #57.) The court takes up each motion in turn.

**I. Motion to Appoint Counsel**

      Initially, DeBauche asks the court to appoint counsel to assist him in trying this lawsuit. DeBauche should be aware that civil litigants have no constitutional or statutory right to the appointment of counsel. *E.g., Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013); *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997). Courts also do not have the power to *compel* lawyers to represent indigents. *Pruitt v. Mote*, 503 F.3d 647,

653 (7th Cir. 2007) (quoting *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 307 (1989)).

The court may exercise its discretion in determining whether to *recruit* counsel to assist an eligible plaintiff who proceeds under the federal *in forma pauperis* statute on a *pro bono* basis. *See* 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent an indigent civil litigant *pro bono publico*."); *Luttrell*, 129 F.3d at 936. Thus, the court construes DeBauche's motion as one for assistance in recruiting volunteer counsel.

Before deciding whether it is necessary to recruit counsel, however, a court must find that the plaintiff has made reasonable efforts to find a lawyer on his own and has been unsuccessful, or that he has been prevented from making such efforts. *Jackson v. Cnty. of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992). To meet this threshold requirement, this court generally requires plaintiffs to submit the names and addresses of at least three attorneys to whom they have written *and* who have refused them. To date, DeBauche has not done this. In fairness, DeBauche does represent in his motion to compel that he has "written to 3 attorneys to ask for counsel but was refused." (Mot. Assistance Recruiting Counsel (dkt. #35) 3.) DeBauche does not, however, provide the names and addresses of those attorneys or submit copies of the rejection letters he received. Therefore, he has yet to comply with the threshold requirement of § 1915(e)(1). While the court must deny his motion at this time, the denial is without prejudice. DeBauche may renew his motion at a later time, submitting the required names and addresses *and* explaining in detail why this case exceeds his capacity to litigate it on his own.

## II. Motion to Include/Amend Complaint

Next, DeBauche has filed a "motion to include," which the court construes as a motion to amend his complaint to include additional factual allegations. Those new allegations can be summarized briefly as follows:

- A guard searching DeBauche's cell in March of 2013 took two of DeBauche's magazines.

- After defendant Kingsland falsified a fighting charge against DeBauche, he was placed in disciplinary segregation. While in segregation, DeBauche was denied access to his legal property. When DeBauche was released on October 16, 2013, he discovered that all of his papers were missing, including his complaint in this case.

- DeBauche was returned to segregation on November 8, 2013, and again denied access to his property. When he moved units from DS1 to DS2, he again discovered that all documents related to this court case were missing.

- On May 30, 2014, DeBauche asked to use the law library and was granted permission on June 11, 2014. He made two other requests in late 2014, but never received access.

- In July of 2014, DeBauche was released from segregation to Unit #7. Officer Hunter admitted at that time that he had thrown out some of DeBauche's property.

- Advocates refuse to represent DeBauche at his conduct report hearings.

- DeBauche is also being denied access to the Federal Rules of Civil Procedure and inmate legal services.

- The Business Office is deliberately keeping DeBauche indigent by seizing all of his funds as they are deposited into his account, such that he cannot purchase writing supplies and personal care items.

- DeBauche was confined in a small room without ventilation or water in June of 2010 for more than an hour.

- DeBauche was denied access to his attorney on January 4, 2008, although he had a pre-approved phone call.

- DeBauche lost a civil case regarding disposition of property due to a staff member's delay in delivering his "legal route."

- DeBauche is suffering from continual physical and psychological stress.

- Officer Bass wrongfully convicted him of obtaining, receiving and spending money that was not his own.

- Security will not let him write letters to his adult children.

(*See* Mot. Include (dkt. #36) ¶¶ 1-14.)

The fundamental problem with most, if not all, of DeBauche's proposed factual additions is that none appear relevant to his approved causes of action. DeBauche was granted leave to proceed on two discrete claims in this lawsuit: (1) a retaliation claim against Correctional Officer James for destroying his property during a cell search on August 21, 2012; and (2) a retaliation claim against Sergeant Kingsland for intentionally assigning him dangerous cellmates. (*See* Sept. 24, 2014 Opinion & Order (dkt. #19).) Despite DeBauche's assertion to the contrary, the conduct set forth in the bullet points above do not demonstrate a continuing pattern of harassment sufficient to justify taking them up in a single lawsuit.

To the extent that DeBauche wishes to add new claims and defendants to this lawsuit via the motion to amend, that request will likewise be denied. A plaintiff is only allowed the joinder of several defendants if the claims arose out of a single transaction or series of transactions and contain a question of fact or law common to all the defendants. Fed. R. Civ. P. 20(a). The Seventh Circuit has emphasized that "unrelated claims against different defendants belong in different suits" and that federal joinder rules apply to prisoner complaints, just as to other litigants before this court. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

DeBauche's motion attempts to do just that, by adding unrelated claims against defendants not currently part of this lawsuit, for discrete, independent instances of misconduct that span seven years and run the gamut of constitutional claims. Even if the court were to presume that DeBauche has stated viable constitutional claims with respect to all of his new allegations, the additions run afoul of the joinder rules.

If there is a recurring fact pattern in the proposed additional allegations, it is arguably denial of access to property, particularly the destruction or retention of legal materials following periods of segregation in late 2013 and 2014. In this lawsuit, however, DeBauche has been granted leave to proceed on narrow, discrete claims against James and Kingsland for retaliation against him by destroying his property in 2012 and then placing him with dangerous cellmates. Any arguable similarities are outweighed by these substantial differences -- in timing, in factual circumstances, and ultimately, in legal theory.[1]

---

[1] Even so, this is not the first time the court has been confronted with allegations that prison officials have seized or destroyed inmates' property, including legal materials following a move to segregation. At some point, it may be appropriate to take up those claims in a consolidated action to consider the legality of the policies and practices of the Wisconsin Department of Corrections with regard to an inmate's access to legal materials, but given the narrow factual disputes and legal claims at issue here,

5

While DeBauche will be allowed to offer evidence of retaliation relevant to his current claims, he will need to bring separate lawsuits that comply with the federal joinder rules for the new, unrelated complaints he alleges in his motion to amend. The court would then screen those complaints pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*

**III. Motion to Compel Third-Party Discovery**

DeBauche also asks the court to compel non-parties to respond to his discovery requests. In particular, DeBauche previously submitted "motions to compel discovery" directed to Nathaniel and Jonathan Jensen, whom he does not expressly identify but who appear to be his biological children. On January 29, 2015, Lieutenant Karna gave him a No-Contact Order that directs him to stop all correspondence with Nathaniel, Shannon and Jeffrey Jensen.

DeBauche has provided the court with copies of the motions to compel discovery. The motion addressed to Jonathan Jensen asks that he produce all letters he received from DeBauche "that were threatening to either Jonathan or Nathaniel" and requests that Jonathan Jensen answer three questions: (1) whether he has ever received a threatening letter from DeBauche; (2) whether he has ever contacted the office of victim services to request that DeBauche not contact him; and (3) whether he has ever contacted Columbia Correctional Institution to request that DeBauche not contact him. (Dkt. #38.) The motion addressed to Nathaniel Jensen makes identical requests. (Dkt. #37.)

These motions are wrong on a number of levels. The fact that the Jensens are non-parties is not fatal to DeBauche's request alone, since "[i]t is clear that discovery in the

the court will not do so in this case.

hands of a non-party is subject to discovery under the Federal Rules." *Guy Chem. Co. v. Romaco AG*, 243 F.R.D. 310, 313 (N.D. Ind. 2007). Specifically, "[s]ubpoenas may be issued to non-parties pursuant to Rule 45." *Ott v. City of Milwaukee*, 274 F.R.D. 238, 239 (E.D. Wis. 2011). "[I]f material is relevant, not privileged, and is, or is likely to lead to, admissible evidence, it is obtainable by way of subpoena." *Jackson v. Brinker*, 147 F.R.D. 189, 194 (S.D. Ind. 1993). Even then, however, DeBauche would have to obtain a subpoena for written discovery, documents or testimony from the court before proceeding against any third-party.

Worse, the material that DeBauche requests bears no apparent relation to his claims. He has not been granted leave to proceed on any claims related to mail or mail monitoring. Again, he has been granted permission to proceed on claims that in retaliation for DeBauche's filing of lawsuits: (1) C.O. James destroyed his personal property; and (2) Sgt. Kingsland intentionally placed him with dangerous cellmates. The discovery responses he seeks from the Jensens appear wholly irrelevant to those claims.

Even worse, his discovery appears to relate to issues already litigated in state court, for which that court apparently entered a so-called "no contact" order. This means DeBauch is essentially asking this court to subvert a state court process in a way that is both disingenuous and offends notion of comity, not to mention beyond this court's jurisdiction. Accordingly, DeBauche's request for this discovery will be denied.

DeBauche separately asks that this court enter an order requiring guards and staff members at CCI to "allow the plaintiff to file and serve motions and summons unhindered and unharrassed[.]" (Mot. to Compel (dkt. #42) 2.) This request will likewise be denied at present. As best the court can discern, DeBauche essentially requests that the court

overturn the No Contact Order (which is the only specific "hindrance" of which he complains), but he offers *no* legal basis for doing so, particularly again in light of the fact that courts 'generally defer to the judgment of prison officials when they are evaluating what is necessary to preserve institutional order and discipline[.]" *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). Regardless, overturning the No Contact Order would be inappropriate since it is, like DeBauche's discovery requests, unrelated to the claims in this suit. *See Williams v. Nelson*, 04-C-774-C, 2005 WL 755770, at *1 (W.D. Wis. Mar. 29, 2005) ("[P]laintiff's request for injunctive relief is improper because he may not request relief for injuries that are beyond the scope of the claims in this lawsuit."). Accordingly, this request will be denied.

**IV. Motion for a Finding of Contempt**

DeBauche further requests that the court find defendants in contempt based on their failure to produce documents and tangible things. There is no basis to find defendants in contempt based on their alleged refusal to participate in discovery -- at least not at present, since they have violated no order of this court. To the extent that DeBauche's intent was to move for *sanctions* against defendants, the court will consider whether sanctions are appropriate in resolving DeBauche's motion to compel below. DeBauche's request for an order holding defendants in contempt is, therefore, denied at this time.

**V. Motion to Compel Production of Documents and Tangible Things**

Finally, DeBauche asks the court to compel defendants to respond to his discovery requests and produce certain documents and tangible objects. Specifically, his motion asks the court to order defendants to:

8

- Answer "truthfully and completely" the requests to which they interposed objections;

- Answer "truthfully and completely" the requests for which they claimed not to have responsive documents;

- Provide DeBauche with the "type and number of inmate complaints filed against the defendant(s) from 20 Aug 12 to 30 Sep 12";

- Provide DeBauche with the "type and number of inmate complaints filed by inmates about the search conducted of Disciplinary Seg Unit 2 from 20 Aug 12 to 30 Sept 12";

- Provide DeBauche with the type and number of *all* inmate complaints filed at CCI from August 20 to September 30, 2012; and

- Produce copies of documents previously taken from DeBauche, including laboratory blood tests, stock and pension information, and other apparently unrelated materials.

(*See* Mot. Compel (dkt. #48).)[2]  Defendants respond that: (1) the objections they interposed were appropriate; (2) their representations that they lacked responsive documents were truthful; and (3) they will provide answers to his new discovery requests within the time period specified by the Federal Rules of Civil Procedure.

The court takes up DeBauche's requests in reverse order.  First, defendants represent they will timely respond to DeBauche's new requests (Decl. of Ann Peacock (dkt. #51) ¶ 14), so that part of DeBauche's motion to compel is denied without prejudice, pending defendants promptly doing so.  DeBauche may renew his motion to compel on these points

---

[2] DeBauche's discovery requests are located at dkt. #41.

should (1) defendants fail to provide the requested discovery, or (2) he believe the responses inadequate.

With respect to requests (B), (C), (F) and (Q), defendants responded that they do not have responsive documents. The court cannot order them to produce what they do not have. DeBauche offers no evidence casting doubt on this representation, while defendants' counsel offers a declaration reiterating that defendants are not in possession of the documents requested. (Decl. of Ann Peacock (dkt. #51) ¶ 13.) Accordingly, the motion to compel must be denied on this point as well.[3]

Finally, DeBauche's other requests -- (E), (G), (H), (I), (K), (L), (M), (N), (O), (P), (R), (S), (U), (V), (W), (X), (Y) and (Z) -- do, for the most part, appear to be unrelated to the narrow claims on which he was granted leave to proceed. He contends that they demonstrate he has been subjected to a "continuous pattern of harassment and intimidation," but again, the materials he requests appear to relate to new claims that are factually unrelated to those on which he was granted leave to proceed. (*See, e.g.*, Requests for Production (dkt. #41) ¶ (E) (documents regarding mail monitoring); ¶ (G) (recordings of a cell search in September 2013); ¶ (H) (recordings of property search in November 2013); ¶ (I) (property disposition slips regarding property seized by "HU 9 guards, Unit Manager Ashworth, Lt. Morris" during the September and November 2013 searches); ¶ (K) (recordings and property disposition forms from July 2014 search); ¶ (L) (last will and testament of Raymond Charlier) ¶ (M) (security documents from 2010 and 2011 related to

---

[3] On the contrary, it appears that the documents in question may actually be in *DeBauche*'s possession, in his stored property, and that DeBauche need only ask the DS2 property officer if he wants to review that property. In his reply brief, DeBauche represents that he *has* asked for a review of his stored materials, only to be told by defendant James that he is "too busy." If DeBauche has still been unable to obtain a property review through no fault of his own, he may bring a motion to compel directed at that issue, and the court will promptly take up the matter.

denial of psychiatric treatment); ¶ (N) (security documents related to denial of exercise); ¶ (P) (correspondence showing why DeBauche was denied "P3 status" on July 27, 2014, received on August 14, 2014, and lost it on September 13, 2014); ¶ (R) (documents related to denial of an extra pillow); ¶ (S) (documents related to denial of a cure for severe allergy to laundry detergent); ¶ (U) (rules related to inmate harassment and inmate noise); ¶ (V) (documents related to request that money be placed in trust for DeBauche's children); ¶ (X) (letters, papers and documents taken in November 2013 and July 2014); ¶ (Y) (documents related to alleged Health Services Unit policy of delaying inmate treatment so as to charge additional copays); ¶ (Z) (documents warning DeBauche not to write to his children and complaints regarding any harassing letters he has written to his children).  The court will, therefore, deny DeBauche's motion to compel defendants to produce documents in response to these requests.

    Some of these requests may be relevant in a different lawsuit, but they are not relevant to the narrow claims DeBauche has pending in this one.  The only possible exceptions are requests (O), which asks for a list of all the guards involved in the search of HU DS 2 during the August 2012 lockdown search, as well as their training histories; and (W), which requests the DOC policies on keeping inmates together when one has been threatened by another or when they have previously fought.  With respect to (O), although defendants have apparently already provided the list of guards involved in the August 2012 search (Decl. of Ann Peacock Ex. A (dkt. #51-1) 7), defendants object that providing the training history of every single guard would be unduly burdensome and is not reasonably likely to lead to the discovery of admissible evidence, but represent they are willing to respond should DeBauche narrow his request.  The court agrees that DeBauche's request is

11

overly broad compared to his search-related retaliation claim and will not compel defendants to produce a training history for *every* guard who worked during the August, 2012 lockdown search.

Request (W) is related to DeBauche's second retaliation claim and asks for:

> The names of officers on HU DS 2 that informed Louis Ramirez #244212 that I said he was trying to kill me and all forms/documents showing why he was placed on admin. [c]onfinement. Plaintiff also request[s] DOC polic[ies] on keeping inmates together when one is threatened by another inmate. Also policy about celling together inmates who have fought each other when celled together several times before.

(Requests for Production (dkt. #41) ¶ (W).) Defendants respond that: (1) they are unclear as to the meaning of DeBauche's first request and will respond if he clarifies it; (2) Ramirez's administrative confinement records are confidential; (3) all non-secured policies and procedures are available for inspection at the institution library; and (4) if plaintiff specifies the specific policies he wants, using the index of CCI and DAI policies provided to him, defendants will provide copies as a courtesy.

Under Rule 34, defendants must only "produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . any designated documents[.]" Fed. R. Civ. P. 34(a)(1)(A). Defendants have complied with this request by making available for inspection and copying their policies and procedures in the institution library. Alternatively, DeBauche may request individual policies and procedures directly from defendants, who represent they are willing to provide him with copies. The court is unclear what more, if anything, DeBauche wishes defendants to do with respect to this request.

To the extent that DeBauche's motion to compel asks for confidential information -- such as Ramirez's administrative confinement records, or DAI/CCI policies that are

considered "secured" -- this court has previously recognized that security concerns may justify limits on discovery in prisoner civil rights actions. *See, e.g., Sheppard v. Walker*, No. 12-cv-703-wmc, 2015 WL 1000000, at *1 (W.D. Wis. Mar. 6, 2015). But defendants have advanced no such justification, at least not explicitly. Rather, they simply respond that those records are "confidential." They do not explain the security reasons (if any) behind the denial, nor do they appear to contend that the request is improper for any other reason (e.g. irrelevant, unduly burdensome or overly broad).

Cognizant of the possibility that there are, in fact, security justifications that justify deeming this information non-discoverable, the court will grant and stay DeBauche's motion to compel on this point. Defendants shall provide proof within seven (7) days that the confidentiality of the administrative confinement records prevents DeBauche from obtaining them in discovery. If possible, defendants also should consider proposing a compromise solution that would allow DeBauche to make use of the records while observing security concerns. *Cf. Turner v. Rataczak*, No. 13-cv-48-bbc, 2014 WL 834721, at *3 (W.D. Wis. Mar. 4, 2014) ("If defendant had a security concern about an otherwise valid discovery request, the proper course was not to issue a blanket objection, but to propose a compromise solution, such as by allowing plaintiff to view the photographs while he is preparing his summary judgment materials but not allowing him to retain possession of them and by submitting copies of the photographs to the court in camera."). For the present, however, the court will grant and stay DeBauche's motion to compel with respect to any materials withheld on the grounds of confidentiality as set forth above.

**VI. Motion for Extension of Time**

Finally, DeBauche has moved to extend the dispositive motion deadline by sixty days, to September 15, 2015, for a number of reasons, including that CCI has been on institutional lockdown since May 7, 2015, which limits inmates' access to the law library, that he has been suffering severe pain, and that he needs certain items he requested in discovery to prepare his motion. While the majority of his requests to compel discovery have now been denied, the court agrees that waiting for the court's ruling coupled with the other circumstances DeBauche delineates justifies an extension, although not the sixty days he is requesting. For the present, the court will extend the dispositive motion deadline by thirty days from the date of this order, making such motions due on August 17, 2015. Should additional circumstances arise that prevent DeBauche from making this deadline, he may request additional relief only for good cause shown. This moderate extension also moots defendants' separate motion that the court stay the dispositive motion deadline, and it will be denied as such.

ORDER

IT IS ORDERED that:

1) Plaintiff David DeBauche's motion to appoint counsel (dkt. #35) is DENIED without prejudice as to later reconsideration.

2) Plaintiff's motion to include/amend complaint (dkt. #36) is DENIED.

3) Plaintiff's motion to compel non-parties to answer discovery requests (dkt. #42) is DENIED.

4) Plaintiff's motion for contempt (dkt. #44) is DENIED.

5) Plaintiff's motion to compel (dkt. #48) is DENIED IN PART as discussed above.

6) Defendants may have until July 23, 2015, to explain why any materials withheld on the grounds of confidentiality are non-discoverable.

7) Plaintiff's motion for an extension of time (dkt. #56) is GRANTED in part. The dispositive motion deadline is extended until August 17, 2015.

8) Defendants' motion to stay the dispositive motion deadline (dkt. #57) is DENIED as moot.

Entered this 16th day of July, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge