IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID DEBAUCHE,

                Plaintiff,

v.

CORRECTIONAL OFFICER JAMES
and SGT. KINGSLAND,

                Defendants.

OPINION AND ORDER

13-cv-553-wmc

---

In this *pro se* prisoner litigation, plaintiff David DeBauche alleges that two employees at Columbia Correctional Institution ("CCI") retaliated against him for exercising his First Amendment rights. Specifically, DeBauche claims that: (1) defendant David James confiscated and destroyed his legal materials and other personal property; and (2) defendant Dustin Kingsland intentionally placed him with dangerous cellmates, hoping that they would cause him bodily harm. Before the court are the parties' cross-motions for summary judgment.[1] (Dkts. ##66, 86.) Because DeBauche has not shown that his protected activity was a motivating factor in the allegedly retaliatory actions, the court will grant defendants' motion, deny plaintiff's motion for summary judgment, and deny plaintiff's remaining motions.[2]

---

[1] The court will grant DeBauche's motion for extension of time (dkt. #73), making his motion for summary judgment timely filed.

[2] The court will deny the motion that DeBauche fashions as a "Motion for a Court Order to Dismiss Defendants' Motion for Summary Judgment." (Dkt. #79.) Notwithstanding plaintiff's failure to file the motion in accordance with the court's summary judgment procedures, it presents no legitimate reason to deny defendants' motion for summary judgment. Likewise, the court will deny plaintiff's discovery motions. (Dkts. ##74, 75,) Contrary to plaintiff's assertions, defendants' response (dkt. #81) is satisfactory. The court will also deny plaintiff's

UNDISPUTED FACTS[3]

### A. Parties

Plaintiff David DeBauche is a Wisconsin Department of Corrections ("DOC") inmate currently confined at CCI. Defendant James is a Correctional Officer II at CCI and is also the property officer for the Disciplinary Segregation 2 ("DS2") unit. Defendant Kingsland is a correctional sergeant at CCI and participated in assigning inmates to cells.

### B. August 2012 Lockdown

DOC policy limits the amount of property that an inmate can have in his cell. With the exception of certain items (such as a typewriter or fan), an inmate's personal property/clothing, hobby materials and legal materials must fit into boxes of specified dimensions.

---

renewed motion for assistance in recruiting *pro bono* counsel (dkt. #80). While plaintiff certainly faced challenges in presenting his claims because of poor health and conditions of confinement, the court again finds that several factors weigh strongly against assisting him in recruiting counsel, including the lack of factual and legal complexity of the case and, given the nature of the evidence, the likelihood that counsel would not have materially aided plaintiff in the development of the facts. *See Jackson v. County of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992) (discussing nonexhaustive list of five factors for district courts to consider in deciding whether to grant a motion for assistance in recruiting counsel). Finally, the court must deny DeBauche's motion for preliminary injunctive relief (dkt. #105), because his request for injunctive relief is wholly unrelated to his retaliation claims in this lawsuit, both in terms of the factual bases for the claims and the alleged wrongdoers, since he provides no facts to suggest that either James or Kingsland could remedy his continued confinement in disciplinary segregation. The Seventh Circuit has made clear that "[u]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Furthermore, a "claim for injunctive relief can stand only against someone who has the authority to grant it." *Williams v. Doyle*, 494 F. Supp. 2d 1019, 1024 (W.D. Wis. 2007).

[3] The following undisputed facts are derived from the parties' respective proposed findings and responses, viewed in a light most favorable to DeBauche.

On August 20, 2012, CCI began an institution-wide lockdown so that staff could search all cells, common areas and inmates to find contraband and ensure compliance with the property restrictions. Before searching an inmate's cell during lockdown, correctional officers first remove the inmate. If they discover that an inmate has excess property in his cell during a lockdown search, the inmate can choose whether to have it stored or destroyed.

Prior to the start of the lockdown, a memorandum was placed in each inmate's cell, including DeBauche's cell in DS2. The memo instructed inmates to sort their property "according to allowable limits before the property is removed from the cell." The memo warned DeBauche and other inmates that if they did not separate the items they wanted to keep from those to be disposed, then staff would make that determination for them.

DeBauche did not separate his property before he was removed from his cell while staff searched it pursuant to the lockdown. DeBauche alleges that among the things he left behind directly on top of his desk in plain sight was an unfinished draft of a restraining order against defendant James. In it, he complained that James, as the property officer, refused to bring him documents related to a pending state court case. As he was being escorted out of his cell by another officer, DeBauche asserts that he saw James enter his cell and begin to search it, so James must have seen the restraining order on his desk. James denies ever seeing or otherwise knowing about the restraining order; in fact, he claims that he did not even search DeBauche's cell because he was in the dayroom in DS2 at the time.

The parties also disagree about what happened later that day when James approached DeBauche with a property disposition form. The form indicated that DeBauche had a total of 130 publications in his cell, well over the limit of twenty-five.[4] According to DeBauche, the form also had the option to destroy his excess property preselected. DeBauche further asserts that James denied his request to inspect his confiscated property and responded that it would cost $100 to have his property sent home rather than destroyed. James also purportedly threatened to keep DeBauche in the "rec. cage" and to give him a conduct report if he refused to sign the form.[5] Finally, DeBauche claims that James destroyed certain legal materials, including his draft restraining order against James. James again denies all of these allegations and claims that DeBauche chose to have his excess publications destroyed instead of stored.

---

[4] According to DOC policy, publications include newspapers, books and two or more pieces of paper bound together, with the exception of legal materials.

[5] More specifically, DeBauche asserts in his brief in support of his own motion for summary judgment that James said he was "going to give [him] a conduct report for disobeying, disruptive, contraband, and anything else." (Pl.'s Opening Br. (dkt. #87) 2.) In addition, DeBauche claims that James responded, "I don't care, do what you got to do" after DeBauche announced his intention to file an inmate complaint because James would not let him confirm whether any of his legal materials were confiscated. (Pl.'s Resp. PFOF (dkt. #85) ¶30.) DeBauche does not cite to these specific statements in any admissible material in the record. Typically, having failed to comply with Federal Rule of Civil Procedure 56(c)(4) as to these statements, despite having shown the ability to do so with respect to his other allegations and being provided with a copy of the court's summary judgment procedures with the preliminary pretrial conference order in this case, dated December 8, 2014 (dkt. #28), the court would not credit these two allegations about what James said. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) ("In considering a motion for summary judgment, the district court is not required to scour the record in search of evidence to defeat the motion[.]"); *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000) ("Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment."). The court will nevertheless consider them given DeBauche's *pro se* status and because the statements are consistent with other statements by James that DeBauche attested to hearing, as well as the fact that he would presumably testify first-hand to these statements by a party opponent at trial.

### C. Cellmate Pairings

Generally, the correctional sergeants or officers who operate each unit determine which cells inmates occupy, with reference to a "Double Celling" guide that reports the "doubling status" of each inmate. Inmates marked "OK" to double may be readily assigned to a cell with another suitable inmate. For inmates designated "Pair with Care" ("PWC"), however, the sergeant or officer charged with making the cell assignments first determines *why* the inmate is considered PWC. Inmates who are not permitted to have a cellmate are "red-tagged," or listed as "do not double." If an *inmate* seeks to be physically separated from a particular inmate or staff member, he can also request a Special Placement Need ("SPN").

After filing this lawsuit, but before amending his complaint, Debauche claims that he was paired with *five* dangerous cellmates: (1) Tony, whose last name remains unknown; (2) Nick Aiken; (3) Francisco Torres; (4) Dale Robinson; and (5) Lance Pinkens. DeBauche alleges that defendant Kingsland retaliated against him for drafting the restraining order against James and/or filing this lawsuit by intentionally pairing him with cellmates who (he hoped) would harm DeBauche. DeBauche asserts generally that Kingsland knew about his First Amendment activity because Kingsland had control of his property, including his legal materials. Kingsland responds that he did not know about his draft of a restraining order against James, nor that this lawsuit existed until he was named as a defendant in December of 2014. Regardless, Kingsland denies that he intentionally paired DeBauche with any dangerous cellmates.

5

In particular, Kingsland asserts that CCI staff is unaware of DeBauche being paired with any inmate named Tony (or Anthony, Tone or Toni), and, therefore, is obviously unable to determine whether such an individual had any pairing restrictions for security reasons. The parties agree that DeBauche *was* paired with Aiken from July 25 to August 6, 2013, and that Aiken had been designated PWC since September 2008, but there is no record of fighting between DeBauche and Aiken. As for Torres, he too was listed as PWC when paired with DeBauche from August 19 until September 3, 2013, and DeBauche asserts that the two argued. With respect to Robinson, Kingsland asserts that CCI staff also has no knowledge of him ever being DeBauche's cellmate, while DeBauche contends that Kingsland repeatedly ignored his demands to be moved out of Robinson's cell until another officer finally moved him due to concern that the cellmates would get into a fight.

Lastly, Pinkens was his cellmate from September 8 to September 24, 2013. At some point, DeBauche claims he approached Kingsland to report a problem about Pinkens, yet DeBauche concedes that he has no SPN on file. Nonetheless, DeBauche contends that Kingsland again ignored him multiple times when he expressed safety concerns about Pinkens. In turn, Kingsland disputes that DeBauche ever requested to be moved or paired with another inmate.

## OPINION

Summary judgment is appropriate when, viewing all facts and inferences in the light most favorable to the nonmoving party, the moving party "shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Even under this lenient standard to defeat a motion for summary judgment, plaintiff must at least "show through specific evidence" that:  (1) "a triable issue of fact remains on issues for which [he] bears the burden of proof at trial"; and (2) "the evidence submitted in support of [his] position must be sufficiently strong that a jury could reasonably find for [him]."  *Knight v. Wiseman*, 590 F.3d 458, 463-64 (7th Cir. 2009) (citations omitted).

To prevail on a First Amendment retaliation claim, DeBauche must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take retaliatory action.  *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *see also Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011).  If DeBauche makes out a prima facie case, each defendant may rebut it by showing that "the harm would have occurred anyway."  *Greene*, 660 F.3d at 980.  Because each defendant only challenges DeBauche's evidence as to the third factor, however, the court will not address the first two.

I. **Defendant James**

DeBauche complains that James retaliated against him by confiscating and destroying his property after James noticed a restraining order on top of DeBauche's desk.  The court noted in its opinion permitting DeBauche to proceed on his retaliation claim that he would need to present admissible evidence -- not the allegations in his

7

complaint or his personal beliefs -- "indicating some causal connection between his First Amendment activity and allegedly retaliatory destruction of his property." (Op. & Order (dkt. #19) 6.) In particular, the timing between the two events alone, the court warned, would likely not be enough to prove that James had an unlawful motive. (*Id.*)

Here, DeBauche has submitted no evidence by which a reasonable juror could find that James knew about him drafting a restraining order, much less intended to retaliate against him for it. Accordingly, he has not met his burden of proof.

Even crediting DeBauche's version of the facts, DeBauche presents *no* evidence indicating that James noticed the restraining order, read it and then, motivated by DeBauche drafting the restraining order against him, confiscated it and coerced DeBauche into agreeing to its destruction. First and foremost, DeBauche must prove and has no evidence that James actually knew about the draft restraining order. *See Morfin v. City of E. Chi.*, 349 F.3d 989, 1005 (7th Cir. 2003) ("The protected conduct cannot be proven to motivate retaliation if there is no evidence that the defendants knew of the protected activity.") (internal quotation marks and brackets omitted) (quoting *Stagman v. Ryan*, 176 F.3d 986, 999-1000 (7th Cir. 1999)). At most, DeBauche offers his sworn statement that he saw James enter his cell by himself and begin searching, but he offers no detail about the manner in which he saw James begin to search (by explaining, for example, that he saw James search his desk or pick up and read papers on the desk), nor does DeBauche claim that he could observe the search of his cell from his vantage point after he was escorted away. Even if it is true that DeBauche saw James enter his cell and begin to search, therefore, he can offer no evidence that would permit a reasonable jury

8

to infer James even knew about the draft restraining order, much less acted on that knowledge.

Moreover, taking as true plaintiff's allegation that James later threatened to punish DeBauche unless he signed the form permitting destruction of his documents, there is no evidence that James did this with a retaliatory motive.[6] For one, the destruction of DeBauche's property appears valid, as he was warned staff would make the determination about which items would be "disposed" if he did not separate his excess property. Furthermore, even if James acted wrongfully by coercing DeBauche to elect the destruction of his confiscated property, without evidence of a retaliatory motive, he is still not entitled to a remedy under the First Amendment. *See Lehn v. Bryant*, No. 04-CV-3100, 2007 WL 1099531, at *3 (C.D. Ill. Apr. 10, 2007) (granting summary judgment to defendant on plaintiff's retaliation claim when there was "no reasonable inference that [defendant's] actions were motivated by retaliation" even though they were "unfair and unnecessary").

Absent any evidence indicating some causal connection between his restraining order and the destruction of his documents, all DeBauche can offer a jury is speculation that James became aware of the restraining order against him and decided to retaliate because of it. Although plaintiff is correct that James ordered him to sign the property disposition form shortly after his cell was searched, that alone is insufficient, particularly when that request was in keeping with standard protocol after a search turned up excess

---

[6] Even crediting specific statements James made when threatening to punish DeBauche (*supra*, note 4), it is telling that James' alleged statements included no direct or even implicit reference to the restraining order. If anything, the statements more strongly indicate that James did not know about the restraining order or act with a retaliatory motive.

or banned materials. *See Springer v. Durflinger*, 518 F.3d 479, 485 (7th Cir. 2008) ("[A]s we have stated on many occasions, timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim.") (internal quotation marks omitted); *Lang v. Ill. Dept. of Children and Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004) ("Close temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment provided that there is also other evidence that supports the inference of a causal link.").

Similarly, DeBauche's speculation is not enough to withstand a motion for summary judgment. *See Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013) ("Even though [plaintiff's] verified complaint alleges retaliation, his speculation regarding the officers' motive cannot overcome the contrary evidence that [the officers'] actions were benign."). Accordingly, the court must grant summary judgment to James.

## II. Defendant Kingsland

DeBauche's separate claims that Kingsland retaliated against him for engaging in First Amendment activity by intentionally pairing him with dangerous cellmates fails for similar reasons: DeBauche presents no evidence indicating that his protected activity was a motivating factor in Kingsland's actions. First, it is undisputed that Kingsland was neither involved in the search of DeBauche's cell nor in the disposition of his property. Second, while DeBauche disputes that Kingsland was unaware of the draft restraining order against James, and at least implies that Kingsland was aware of this lawsuit, his unsworn assertion that Kingsland knew about these First Amendment activities based on

a general representation that his legal materials were "under the direct control of Kingsland" is insufficient to create a genuine dispute of fact.  (Pl.'s Resp. PFOF (dkt. #85) ¶68.)

Even if it were enough for a reasonable factfinder to infer that Kingsland was aware of DeBauche's First Amendment activity because he "controlled" DeBauche's legal materials, he cites *no* evidence supporting this assertion, nor can the court discern any reason why DeBauche would have personal knowledge about Kingsland's responsibilities. Accordingly, DeBauche has failed to offer admissible evidence discrediting Kingsland's assertion that he was unaware of DeBauche's protected activity, at least until he was formally named as a defendant in this case in December of 2014, which postdates all of the allegedly retaliatory cellmate pairings.  Plaintiff furthermore failed to submit any evidence that Kingsland acted with a retaliatory motive.  Thus, despite DeBauche's allegation that Kingsland ignored his complaints about cellmates, his retaliation claim fails because he cannot show that any of his protected activity was a motivating factor in Kingsland's actions.  *See Springer*, 518 F.3d at 484 ("Here, all the plaintiffs have to go on is a collective hunch about the defendant's motives, which in itself will not survive a motion for summary judgment.").

Because DeBauche has failed to establish the third factor of his prima facie retaliation claim against Kingsland, summary judgment in his favor is appropriate as well.[7]

---

[7] Although the court will dismiss this First Amendment lawsuit because DeBauche neither asked to proceed under the Eighth Amendment, nor did the court screen such a claim to go forward, it does so without prejudice to DeBauche pursuing a claim against Kingsland under the Eighth

ORDER

IT IS ORDERED that:

1) Defendants' motion for summary judgment (dkt. #66) is GRANTED;

2) Plaintiff's motion for summary judgment (dkt. #86) is DENIED; and

3) Plaintiff's motion for extension of time (dkt. #73) is GRANTED, making his motion for summary judgment timely filed;

4) Plaintiff's remaining motions (dkts. ##74, 75, 79, 80, 101, 105) are DENIED;

5) Defendants' motion to stay case deadlines and trial date is (dkt. #103) is DENIED as moot; and

6) The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 11th day of January, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

Amendment in another lawsuit arising out of this basic set of facts. As a *pro se* plaintiff, he will at least be allowed to consider bringing that claim, keeping in mind that to prevail on an Eighth Amendment deliberate indifference claim based on Kingsland's refusal to remove him from Pinkens's and Robinson's cells despite repeatedly complaining that he was in danger of physical assault, he must show that Kingsland acted "with deliberate indifference" and "exposed [him] to a sufficiently substantial 'risk of serious damage to his future health[.]'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)); *see also Brown v. Budz*, 398 F.3d 904 (7th Cir. 2005); *Weiss v. Cooley*, 230 F.3d 1027 (7th Cir. 2000); *Billman v. Ind. Dept. of Corr.*, 56 F.3d 785 (7th Cir. 1995). Also, under the Prison Litigation Reform Act, DeBauche should be aware that unless he were physically injured, he could only seek injunctive relief and nominal or punitive damages on an Eighth Amendment claim where "[p]rison officials [] recklessly expose a prisoner to a substantial risk of a serious physical injury." *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011); *see also Wright v. Miller*, 561 F. App'x 551, 555-56 (7th. Cir. 2014) ("[T]o award punitive damages, a jury must find that [the defendant] was 'motivated by evil motive or intent' or acted with 'reckless or callous indifference' to [the plaintiff's] constitutional rights.") (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Finally, DeBauche should be aware that he must have complied with the exhaustion requirement of 42 U.S.C. § 1997e if he seeks to proceed on an Eighth Amendment claim as a prisoner.